**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ROBERTO S. C., | ) | NO. ED CV 19-873-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PROCEEDINGS**

Plaintiff filed a complaint on May 8, 2019, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on June 14, 2019. Plaintiff filed a motion for summary judgment on November 25, 2019. Defendant filed a motion for summary judgment on February 3, 2020. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed May 14, 2019.

///
///

**BACKGROUND**

Plaintiff, a former machinist/quality inspector, asserts disability since March 31, 2015, based on, <u>inter alia</u>, alleged type I diabetes, neuropathy and toe ulcers (Administrative Record ("A.R.") 47-49, 53, 67, 74, 82, 267-80, 305-06, 330). An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 15-27, 33-92).

The ALJ found that Plaintiff has severe diabetes mellitus with peripheral neuropathy, spondylosis of the lumbar spine, depressive disorder, bilateral hip pain and posttraumatic injury (A.R. 17). However, the ALJ also found that Plaintiff retains the residual functional capacity to work:

> Specifically, the claimant can lift, carry, push and pull up to ten pounds occasionally and less than ten pounds frequently; sit up to eight hours in an eight-hour workday but after thirty minutes of sitting would need to stand and stretch for less than three minutes before returning to sitting. The claimant can stand and/or walk for less than two hours in an eight-hour workday but for twenty minutes at a time. The claimant can occasionally operate foot controls bilaterally and occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop and crouch but never kneel or crawl. The claimant should avoid even moderate exposure to unprotected heights and moving mechanical parts. The

|   |   |
|---|---|
| 1 | claimant can occasionally operate a motor vehicle but should |
| 2 | avoid concentrated exposure to extreme cold and vibration. |
| 3 | The claimant is able to perform simple, routine tasks; able |
| 4 | to sustain concentration, persistence and pace for simple, |
| 5 | routine work; able to make simple work-related decisions; |
| 6 | can occasionally interact with supervisors, co-workers, and |
| 7 | the general public as well as able to adapt to routine |
| 8 | changes in simple work. |

(A.R. 20). The ALJ summarized the medical record and discounted Plaintiff's allegations of subjective symptomatology as "not entirely consistent with the objective medical evidence" (A.R. 21-25). The ALJ identified certain sedentary jobs Plaintiff assertedly could perform (A.R. 26-27 (adopting vocational expert testimony at A.R. 87-91)). The ALJ denied benefits (id.). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

(1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[1] legal error. Contrary to Plaintiff's arguments, the ALJ properly considered Plaintiff's subjective allegations and the opinions of the consultative examiner.

///
///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

**I.   Summary of Plaintiff's Testimony and Statements**

Plaintiff testified that he could not work primarily because of diabetic pressure sores/ulcers he gets on his toes from being on his feet (A.R. 47-48, 53, 67, 74, 82). Plaintiff said he is on his feet up to four hours a day, and his doctors tell him to be on his feet less frequently (A.R. 47-48, 73, 83-84). As of the July, 2018 hearing, Plaintiff reportedly had one sore that had been on his toe since 2015 and another sore that has been on his toe since 2016 (A.R. 49). Plaintiff estimated he could lift a maximum of 10 pounds (A.R. 85). Plaintiff estimated he could walk for no more than 20 minutes at a time before experiencing numbness in his hip (A.R. 49, 84). Plaintiff claimed that the bottoms of his feet are always numb due to neuropathy, so he does not feel pain when he walks, but Plaintiff also claimed to feel pain from the toe ulcers (A.R. 49). Plaintiff estimated that he could sit for as many as 30 minutes at a time before needing to get up "and circulate the numbness" (A.R. 84). Plaintiff claimed he could not sit for a sedentary job because of alleged pain in his lower back and numbness in his right hip from surgery following a car accident (when Plaintiff was 23 years old) (A.R. 57-58, 85).[2] Plaintiff said he is "always nauseous" in the morning, which supposedly prevents him from eating until the afternoon and which supposedly interferes with his ability to concentrate to run machinery (A.R. 56-57, 67, 69-70, 73). Plaintiff also said he has depression and anxiety from his health problems (A.R. 58-60, 72-73).

///

---

[2]   Plaintiff is now 40 years old (A.R. 36).

In an Exertion Questionnaire dated December 7, 2016, Plaintiff claimed that he could not work as a machinist/quality inspector because that work assertedly requires that he be on his feet for an entire shift (A.R. 330). Plaintiff reported that he suffers from pain, fatigue, numbness in his lower back and hip from having a metal plate put in his pelvis, diabetic neuropathy, chronic nausea and gastroparesis which supposedly interfere with his ability to stand and to stay focused at work (A.R. 330-32). Plaintiff asserted that he could do housework for 20 minutes before getting fatigued from the waist down (A.R. 332). Plaintiff asserted that he requires 30 minutes of rest per day (A.R. 332). Plaintiff does not always nap, but if and when he does, his nap lasts one to two hours (see A.R. 332).

## II. Summary of the Relevant Medical Record

The medical record consists largely of treatment notes from Arrowhead Regional Medical Center for diabetes-related issues. From 2014 to 2018, Plaintiff presented for fairly regular emergency room treatment for insulin, epigastric and abdominal pain, and nausea and vomiting associated with diabetic gastroparesis and ketoacidosis (A.R. 413-635, 785-99, 813-30, 841-60, 866-78, 893-911, 914-25, 930-41, 950-71, 1021-33, 1039-47, 1060-73, 1076-79, 1156-93, 1366-1403, 1556-88,

///
///
///
///
///

1593-1610, 1615-23, 1631-67, 1670-1705).³

From 2015 to 2018, Plaintiff also sought regular treatment from primary care doctors for these same diabetes-related issues (A.R. 638-784, 806-12, 912-13, 926-29, 942-43, 947-49, 972-1001, 1005-11, 1034-35, 1048-59, 1074-75, 1194-1229, 1238-48, 1284-88, 1404-68, 1547-55, 1589-92, 1611-14, 1628-30, 1668-69). Plaintiff was assessed with, inter alia, depression, diabetes mellitus,⁴ diabetic gastroparesis, diabetic neuropathy, diabetic angiopathy, and shortness of breath (A.R. 640, 656, 662). In July of 2016, Plaintiff reportedly had an open sore on his right great toe that had not healed, and he was diagnosed with cellulitis of the foot and referred for wound care treatment (A.R. 649-51). Plaintiff thereafter received periodic wound care treatment for toe ulcers on both feet (A.R. 716-17, 733-35, 779-82, 806-09, 912-13, 926-27, 942-43, 949, 972, 978-86, 990-91, 994-95, 1005-06, 1008-11, 1034-35, 1048-49, 1074-75, 1194-95, 1201-02, 1209-12, 1215-18, 1404-05, 1411-12, 1419-22, 1425-28, 1589-92, 1611-14, 1628-29, 1668-69). Treatment providers recommended, inter alia, that Plaintiff wear diabetic shoes daily and limit prolonged walking and

---

³ Plaintiff also presented for emergency treatment in March of 2016 for right hip pain with radiation down his leg with a history of surgery for an acetabular fracture (A.R. 861-65). He then was diagnosed with posttraumatic osteoarthritis, heterotopic bone formation, sciatica and dehydration neuropathy (id.). A treatment note from May of 2017 mentions orthopedic surgery to the right hip "15 y/o" (A.R. 891). Plaintiff complained of right hip pain in June, July, September and November of 2017, as well as in July of 2018 (A.R. 1002-03, 1036-37, 1213, 1249-53, 1624-26).

⁴ In August of 2017, Plaintiff was given an insulin pump (A.R. 1095-96).

7

standing. See, e.g., A.R. 912, 972, 990, 994, 1005, 1010, 1074, 1194, 1209, 1211, 1217, 1404, 1411, 1419, 1592, 1668.

Neurological evaluations from April, July and October of 2017, as well as from January and July of 2018, reported that Plaintiff walked with an ataxic gait (A.R. 1080-88, 1535-36). Nerve conduction and EMG studies of the lower extremities done in May of 2017 reportedly showed "[m]oderate to severe neuropathy motor sensory axonal" and lumbar radiculopathy at L5-S1 with some component of L4 (A.R. 1089-90). A May, 2017 lumbar spine MRI showed a 2-mm broad-based posterior disc bulge at L3-L4, a 2- to 3-mm broad-based disc posterior disc bulge at L4-L5, and bilateral pars defects with grade 1 anterolisthesis at L5-S1 with a 3-mm broad-based posterior disc bulge at this level (A.R. 1091-92).

Consultative examiner Dr. Gabriel T. Fabella reviewed medical records and prepared a Complete Internal Medicine Evaluation dated August 30, 2018 (A.R. 1499-1506). Plaintiff reportedly complained to Dr. Fabella of uncontrolled diabetes, diabetic foot ulcers, peripheral neuropathy, and feeling nauseated "all the time" (A.R. 1499-1500). On examination, Dr. Fabella noted healing diabetic plantar ulcers on the right and left big toes, and decreased sensation and reflexes in the lower extremities (A.R. 1500-03). Dr. Fabella diagnosed diabetes mellitus with moderate to severe peripheral neuropathy involving both feet and diabetic foot ulcers (A.R. 1503). Dr. Fabella opined that Plaintiff could: (1) lift and carry 10 pounds occasionally and less than 10 pounds frequently; (2) stand less than two hours in an eight-hour day with normal breaks; (3) sit with no limitation; and

(4) frequently stoop or bend; but must (5) avoid working with dangerous machinery or at unprotected heights. See A.R. 1503; compare A.R. 1515-20 (Dr. Fabella's "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form dated September 6, 2018, reporting similar limitations, i.e., Plaintiff could: (1) continuously lift and carry up to 10 pounds; (2) sit for six hours, stand for two hours, and walk for two hours in and eight-hour workday; (3) occasionally use his hands and feet for work; (4) never climb stairs, ramps, ladders or scaffolds or balance; (5) occasionally stoop, kneel, crouch and crawl; (6) never work at unprotected heights, around moving mechanical parts, or operate a motor vehicle; and (7) occasionally work in humidity and wetness, around pulmonary irritants, in extreme heat, cold, and around vibrations with moderate noise).[5]

Consultative examiner Dr. Khushre Unwalla reviewed medical records and prepared a Complete Psychiatric Evaluation dated August 20, 2018 (A.R. 1507-11). Plaintiff complained of severe fatigue, numbness in his feet, and depression (A.R. 1507-08). Plaintiff admitted that he uses marijuana on a regular basis and that, the week before, he had used amphetamines he purchased "on the streets" (A.R. 1508). On examination, Plaintiff reportedly was sobbing, depressed, anxious, tearful and reactive with slow thought processes, negative cognition, poor recall, poor concentration, concrete thinking, and fair insight and judgment (A.R. 1509-10). Dr.

---

[5] Non-examining state agency physicians reviewed the record in November of 2016 and February of 2017 and found Plaintiff capable of medium work (A.R. 93-101, 113-21).

9

Unwalla diagnosed depressive disorder (not otherwise specified), ongoing cannabis abuse, and ongoing amphetamine abuse (occasional), with a guarded prognosis if Plaintiff does not get treatment and stop using drugs (A.R. 1510-11). Dr. Unwalla opined that Plaintiff would have certain "moderate" limitations (A.R. 1511-13). In this context, a "moderate" limitation means "more than a slight limitation . . . but the individual is still able to function satisfactorily" (A.R. 1512).

### III. **Substantial Evidence Supports the Conclusion that Plaintiff Can Work.**

Substantial evidence supports the conclusion Plaintiff is not disabled. No treating physician opined Plaintiff is disabled from work. As summarized above, consultative examiners Drs. Fabella and Unwalla endorsed a residual functional capacity generally consistent with the residual functional capacity the ALJ assessed. Compare A.R. 20 (residual functional capacity) with A.R. 1503, 1511-13 (consultative examiners' opinions). These doctors' opinions constitute substantial evidence to support the ALJ's determination of non-disability. See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (opinion of examining physician can provide substantial evidence to support administrative conclusion of non-disability). Additionally, (although the ALJ did not appear to rely on these opinions), the state agency physicians' opinions finding Plaintiff capable of medium work also support the Administration's decision (A.R. 93-101, 113-21). See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1991).

The vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform certain jobs existing in significant numbers in the national economy (A.R. 87-91). The ALJ properly relied on this testimony in denying disability benefits. See Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).

To the extent any of the medical evidence is in conflict, it was the prerogative of the ALJ to resolve such conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001); see also Treichler v. Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the ALJ" "to resolve conflicts and ambiguities in the record"). When evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision. See Andrews v. Shalala, 53 F.3d at 1039-40; accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The Court will uphold the ALJ's rational interpretation of the evidence in the present case notwithstanding any conflicts in the record.

**IV. Plaintiff's Remaining Arguments are Unavailing.**

Plaintiff argues that the ALJ erred in finding Plaintiff not credible and in rejecting portions of Dr. Fabella's opinions. No material error occurred. The ALJ's residual functional capacity determination properly incorporated Plaintiff's subjective complaints and Dr. Fabella's opinions.

Consistent with Plaintiff's testimony that: (1) he suffers diabetic pressure sores/ulcers on his toes from being on his feet up to four hours a day (A.R. 47-48, 53, 67, 73-74, 82-84); and (2) he could lift a maximum of 10 pounds (A.R. 85), walk for no more than 20 minutes at a time (A.R. 49, 84), and sit for up to 30 minutes at a time before needing to get up (A.R. 84), the ALJ limited Plaintiff to sedentary work lifting no more than 10 pounds, sitting no more than 30 minutes at a time, and standing no more than 20 minutes at a time for less than two hours total in an eight-hour day (A.R. 20). While Plaintiff testified that he supposedly cannot sit for a sedentary job because of allegations of numbness in his right hip and pain in his lower back (A.R. 57-58), Plaintiff also testified that he could sit for up to a half hour at a time before needing to get up and move around to stretch (A.R. 84-85).

Plaintiff testified that he is nauseous in the mornings, which supposedly prevents him from eating until the afternoon and supposedly prevents him from concentrating sufficiently to run machinery, and Plaintiff also testified he has depression and anxiety (A.R. 56-60, 67, 69, 70, 72-73). However, there is no evidence (or even any specific assertion) that these alleged conditions necessarily limit Plaintiff's ability to perform simple sedentary work not requiring the running of machinery.

To the extent Plaintiff may argue that the ALJ failed adequately to account for Plaintiff's claimed need for rest, any such argument must be rejected. As noted above, Plaintiff claimed that he must rest after 20 minutes of walking, requires 30 minutes of rest during the

day, and, if he naps, he naps for one to two hours (A.R. 332). Plaintiff never claimed that his alleged conditions require him to nap (as distinguished from requiring him to rest). A normal workday would accommodate Plaintiff's claimed need for 30 minutes of rest. See, e.g., Ward v. Berryhill, 2019 WL 142203, at *10 (S.D. Cal. Jan. 9, 2019), adopted, 2019 WL 339169 (S.D. Cal. Jan. 28, 2019) (typical workday that includes two 15-minute breaks and one 30-minute lunch period would accommodate claimant's need for breaks totaling 30 minutes in a day); Laplante v. Berryhill, 2017 WL 4337100, at *5 (D. Ct. Sep. 29, 2017) (normal workday includes morning, lunch and afternoon breaks); Kelling v. Berryhill, 2017 WL 2118353, at *3 (D. Kan. May 16, 2017) (Social Security Regulations recognize that workday includes a lunch break and two other breaks spaced at approximately two-hour intervals through the workday); see also Social Security Ruling 96-9p (sedentary work provides for seating for approximately six hours in an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals).

Plaintiff faults the ALJ for failing to adopt portions of Dr. Fabella's Medical Source Statement form. See Plaintiff's Motion, pp. 10-13. The ALJ gave "substantial weight" to the detailed limitations Dr. Fabella stated in the Complete Internal Medicine Evaluation. See A.R. 20, 22 (citing A.R. 1499-1506). The ALJ incorporated those limitations, or even greater limitations, into the ALJ's residual functional capacity assessment. Id. However, the ALJ gave "little weight" to the Medical Source Statement form in which Dr. Fabella checked "occasional" limits across all activities for the use of the hands. See A.R. 22-23 (citing A.R. 1515-20). The ALJ correctly

13

reasoned that there was no evidence of any upper extremity limitations supporting the checked entries on this form (A.R. 23). Indeed, Dr. Fabella left entirely blank the space on the form calling for an identification of "the particular medical or clinical findings" supporting any hand limitations (A.R. 1517).

The ALJ need not have explicitly detailed the reasons for failing to adopt some of Dr. Fabella's opinions (which were seemingly inconsistent with some of Dr. Fabella's other opinions). See Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) ("Nyman") (upholding ALJ's rejection of "the expert opinion of an examining psychologist" despite the fact that the ALJ made the rejection "without stating his reasons for doing so"; ALJ "was not obliged to explicitly detail his reasons for rejecting the psychologist's opinion"); but see Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (stating, contrary to Nyman, that an ALJ may reject an examining physician's opinion only "by providing specific and legitimate reasons that are supported by substantial evidence") (citations and quotations omitted).

Morever, even if the circumstances of the present case required that the ALJ state specific and legitimate reasons for rejecting the portions of Dr. Fabella's form opinion that the ALJ did not expressly adopt, the ALJ satisfied this requirement. The ALJ emphasized the virtually nonexistent medical evidence of any upper extremity limitations. As the ALJ pointed out, the record reflects that Plaintiff complained mostly of lower extremity issues due to diabetic neuropathy/ulcers. See A.R. 23. Dr. Fabella's own examination found normal range of motion in Plaintiff's shoulders, elbows and wrists

14

(A.R. 1502). As possible evidence that Plaintiff might have some upper extremity limitations, Plaintiff points to the emergency room treatment Plaintiff received in September of 2016 after Plaintiff intentionally shot himself in his left middle finger with a BB gun, which had caused some soft tissue swelling. See Plaintiff's Motion, p. 11 (citing A.R. 800-05 (treatment records)). However, there is no indication from this treatment (or otherwise) that Plaintiff suffered any work-related functional limitations of the hand which would persist for more than 12 months. See 42 U.S.C. § 423(d)(1)(A) (claimant must prove impairments could be expected to last a continuous period of 12 months). In sum, no material error occurred with respect to the ALJ's consideration of Dr. Fabella's opinions.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 6, 2020.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE